1998 SD 58

**Jennis HOFER, Petitioner and Appellant,**

v.

**Joe CLASS, Warden, South Dakota State Penitentiary, Appellee.**

No. 20025.

Supreme Court of South Dakota.

Argued March 24, 1998.

Decided June 3, 1998.

Douglas R. Kettering of Hosmer and Kettering, Yankton, for petitioner and appellant.

Mark Barnett, Attorney General, Connie K. Nilles, Assistant Attorney General, Pierre, for appellee.

MILLER, Chief Justice.

[¶ 1.] Jennis Hofer pled guilty to two counts of first-degree manslaughter for shooting Andrew Wipf, Sr. and Andrew Wipf, Jr. in 1984. He was sentenced to two concurrent life sentences. In July 1995 he filed an application for a writ of habeas corpus claiming ineffective assistance of counsel and an unconstitutional plea. He appeals the denial of the writ. We affirm.

## FACTS

[¶ 2.] Hofer operated a farm in Hutchinson County, South Dakota. He had a history of disagreements with his neighbors, Wipfs, mostly involving Hofer's allegations that Wipfs were draining water onto his land.[1]

---

1. Hofer also alleged that Wipfs were responsible for several acts of vandalism on his land. He claims they emptied the gas out of his tractor, stole his tools, flattened tires on his tractor, put a dead hog in one of his feeder pig yards, stole a mare, and killed another horse.

[¶ 3.] On May 17, 1984, Hofer saw Wipfs working in one of their fields. He stopped his pickup truck alongside the field and confronted the two about their alleged draining of water onto his land. Hofer claims that as the conversation got heated, Andrew, Jr. went and removed an "object" from his tractor cab. Hofer then got his rifle out of his pickup truck. Hofer next claims that as the two men started to approach him and were laughing at him, he shot and killed them.

[¶ 4.] Hofer was indicted by a Hutchinson County grand jury on two alternative counts each of first-degree murder and first-degree manslaughter. His trial counsel investigated possible defenses. Self-defense and insanity were ruled out. After a motion for change of venue and a requested continuance were denied, Hofer decided to accept the State's proposed plea bargain. On October 15, 1984, he pled guilty to two counts of first-degree manslaughter and was sentenced to two concurrent life sentences. No direct appeal was filed.

[¶ 5.] In July 1995 Hofer filed an application for writ of habeas corpus, and that application was subsequently denied. He appeals, raising the following issues:

1. Whether there was ineffective assistance of counsel at the trial court level.

2. Whether Hofer's plea was unconstitutional because he was under the influence of Valium and Darvocet at the time it was made.

## STANDARD OF REVIEW

[¶ 6.] The scope of review in a habeas proceeding is limited because the remedy sought is in the nature of a collateral attack upon a final judgment. *Lien v. Class,* 1998 SD 7, ¶ 10, 574 N.W.2d 601, 606 (citing *Black v. Class,* 1997 SD 22, 560 N.W.2d 544).

Habeas corpus can be used only to review (1) whether the court had jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases, whether an incarcerated defendant has been deprived of basic constitutional rights.

*St. Cloud v. Leapley,* 521 N.W.2d 118, 121 (S.D.1994) (citations and internal quotations omitted).

[¶ 7.] The petitioner has the initial burden of proof on habeas review. *Loop v. Class,* 1996 SD 107, ¶ 11, 554 N.W.2d 189, 191. We review factual findings by the habeas court under the clearly erroneous standard. *Id.* Whether a defendant has received ineffective assistance of counsel is essentially a mixed question of fact and law. *Lien,* 1998 SD 7, ¶ 12, 574 N.W.2d at 607; *Loop,* 1996 SD 107, ¶ 11, 554 N.W.2d at 191 (citing *Aliberti v. Solem,* 428 N.W.2d 638, 640 (S.D. 1988)). "In the absence of a clearly erroneous determination, we defer to the habeas court's findings of fact regarding what counsel did or did not do, but we may substitute our own judgment 'as to whether defense counsel's actions or inaction's [sic] constituted ineffective assistance of counsel.'" *Lien,* 1998 SD 7, ¶ 12, 574 N.W.2d at 607 (quoting *Lykken v. Class,* 1997 SD 29, ¶ 6, 561 N.W.2d 302, 304–05) (other citation omitted).

## DECISION

[¶ 8.] **1. Whether there was ineffective assistance of counsel at the trial court level.**

[¶ 9.] We have adopted the test set forth by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984), for determining if a defendant received effective assistance of counsel as guaranteed by Article VI, § 7, of the South Dakota Constitution. *Luna v. Solem,* 411 N.W.2d 656, 658 (S.D.1987). This test places the burden on the petitioner to show (1) that counsel's performance was deficient, and (2) that petitioner was prejudiced by the deficient performance. *Lien,* 1998 SD 7, ¶ 14, 574 N.W.2d at 607; *Loop,* 1996 SD 107, ¶ 14, 554 N.W.2d at 191.

[¶ 10.] Under the first prong of the *Strickland* test, we have held:

When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonable-ness. Judicial scrutiny

of counsel's performance must be highly deferential. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Lien,* 1998 SD 7, ¶ 14, 574 N.W.2d at 607 (citing *Two Eagle v. Leapley,* 522 N.W.2d 765, 768 (S.D.1994)) (internal citations and quotations omitted). Under the second prong of the test concerning prejudice to the petitioner, we have stated:

In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged failure of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led *counsel* to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence *likely* would have changed the *outcome* of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

*Id.,* 1998 SD 7, ¶ 15, 574 N.W.2d at 607–08 (citing *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 210 (1985)) (emphasis in original).

[¶ 11.] "Where a matter does not go to trial there is an increased burden to show ineffective assistance of counsel. In order to invalidate a guilty plea, appellant must show gross error on the part of counsel in recommending that he plead guilty." *Williams v. State,* 349 N.W.2d 58, 62 (S.D.1984) (citation omitted).

[¶ 12.] Hofer claims that counsel was deficient in several ways. He first maintains counsel's decision not to pursue a self-defense claim and not to interview certain witnesses was ineffective assistance. He also argues there was ineffective assistance from the failure to interview various State witnesses, inadequate pretrial discovery, and failure to provide proper mitigating evidence at the sentencing hearing. Each alleged omission will be considered in turn.

[¶ 13.] Hofer alleges that trial counsel was deficient for not pursuing a self-defense claim and for not interviewing certain witnesses to support a self-defense claim. The habeas court decided that the decision by trial counsel to not pursue a self-defense claim was the correct one. We find no error in that holding.

[¶ 14.] Specifically, Hofer alleges it was error for trial counsel to not interview Alice Iverson, who would have testified that Andrew, Sr. told her he would kill Hofer if he came near his family. Hofer also claims that Lorene Wipf should have been called as a witness because she could have testified that Andrew, Sr. carried a gun in his shoe. Hofer asserts that this testimony, coupled with alleged threats made to him personally by Wipfs, would have helped to establish a self-defense claim. Hofer finally alleges that it was error for trial counsel not to make sure the crime scene vehicles were impounded and not to investigate the possibility of a weapon at the scene.

[¶ 15.] "Selection of a defense is a trial strategy this Court will seldom reevaluate." *Lodermeier v. Class,* 1996 SD 134, ¶ 12, 555 N.W.2d 618, 623 (citing *Fast Horse v. Leapley,* 521 N.W.2d 102, 106 (S.D.1994)). Likewise, "[f]ailure to call a witness will not automatically produce ineffective assistance of counsel." *Id.,* 1996 SD 134, ¶ 20, 555 N.W.2d at 625 (citing *Garritsen v. Leapley,* 541 N.W.2d 89, 94 (S.D.1995)).

[¶ 16.] Trial counsel, in his testimony at the habeas hearing, articulated his reasons for not pursuing a self-defense claim. He stated his belief that any evidence of threats made to Hofer, or about Hofer to others, would have hindered Hofer's chances more than

helped them. Trial counsel stated that "[t]he wors[e] and more threatening that we built the impression of the Wipfs, in my opinion, the more jeopardy we were placing our client in because it went directly to motive, it went directly to premeditation." This rationale appears reasonable in light of the fact that Hofer stopped alongside Wipfs' field and started the argument. He also pulled his gun out of his pickup truck before Wipfs made any threatening moves towards him.

[¶ 17.] Further, Hofer's reliance on *Chambers v. Armontrout*, 907 F.2d 825 (8th Cir. 1990), and *Tosh v. Lockhart*, 879 F.2d 412 (8th Cir.1989), to show ineffective assistance of counsel for failure to call a witness, is misplaced. In *Chambers*, the defendant asserted self-defense, but called no witnesses to support it. That is not the case here, because a claim of self-defense was never advanced. Likewise, *Tosh* involved a situation where counsel failed to call alibi witnesses, a situation clearly distinguishable from the present case.

[¶ 18.] Hofer's claim that Andrew, Jr. had an "object" in his hand was apparently unfounded. After a search of the area and all the vehicles, no weapons were found. A crowbar and a tiling spade were found near Wipfs' tractor, but they were nowhere near where the victims were found. Also, the fact that Andrew, Sr. carried a gun in his shoe is irrelevant. There was never any indication that Hofer knew this at the time of the killing, nor that Andrew, Sr. ever reached toward his shoe to grab a gun.

[¶ 19.] Trial counsel's decision to not pursue a self-defense claim was grounded in trial strategy and it has not been shown that it fell below an objective reasonableness standard. Additionally, Hofer has failed to meet his burden in establishing prejudice. *Lien*, 1998 SD 7, ¶ 15, 574 N.W.2d at 608.

[¶ 20.] Hofer next claims ineffective assistance of counsel because he alleges trial counsel failed to interview certain witnesses for the State, failed to consider the effects of the medication Hofer was taking, and failed to present mitigating evidence at the time of sentencing to arouse the court's sympathy for Hofer.

[¶ 21.] Hofer has not shown how trial counsel failed to interview certain witnesses or how such failure amounted to error. He has not pointed to the testimony of any witnesses that would have helped his case. He mentions Alice Iverson again, but her testimony, as discussed above, was not likely to have helped him. He cites to *McQueen v. Swenson*, 498 F.2d 207, 216 (8th Cir.1974), for the proposition that lack of pretrial investigation amounts to ineffective assistance of counsel. But in the present case, Hofer admits that trial counsel did perform such pretrial investigations as reviewing documents, talking to gun ballistic experts, and reviewing the coroner's report. Other than the witnesses discussed above who would have testified about the threats Wipfs allegedly made, Hofer has not shown what more trial counsel could have discovered that would have helped his case. He cannot point to any evidence or testimony that could have been discovered by trial counsel that would have helped his case. Broad statements that counsel was ineffective, without supporting evidence, simply is not enough.

[¶ 22.] Hofer next claims that it was ineffective assistance of counsel to not consider the drugs he was taking. However, trial counsel testified at the habeas hearing that he was aware Hofer was taking Darvocet at the time of the killings. He further testified he believed Hofer was able to understand what was going on and to make decisions. Moreover, Hofer apparently has never made an issue of the medication affecting his judgment until now, and he has not shown error.

[¶ 23.] Lastly, Hofer claims ineffective assistance of counsel because trial counsel failed to call Hofer's family members to arouse sympathy in the court as a possible mitigating factor. The decision to call witnesses is a form of trial strategy. *See Lodermeier*, 1996 SD 134, ¶ 20, 555 N.W.2d at 625. Trial counsel stated that he did not want to call family members, because he was afraid that they would testify on cross-examination that Hofer was angry with Wipfs and had a long standing feud with them. This, again, would go to motive or premeditation. Trial counsel did call several witnesses outside the

family. These witnesses testified about the water problems, how Hofer was a good neighbor, and how he acted under stress. The Reverend Charles Asche was even called and spoke very highly of Hofer.

[¶ 24.] Hofer has failed to show that trial counsel's strategy was not reasonable. He has also failed to establish prejudice. Hofer has failed to establish error on the part of trial counsel in recommending that he plead guilty.[2]

[¶ 25.] **2. Whether Hofer's plea was unconstitutional because he was under the influence of Valium and Darvocet at the time it was made.**

[¶ 26.] Hofer claims that his guilty plea was not voluntary because he was under the influence of Darvocet and Valium at the time it was made. We look to the totality of the circumstances to determine if a plea was knowing and voluntary. *State v. Lohnes*, 344 N.W.2d 686, 688 (S.D.1984) (citing *State v. Bolger*, 332 N.W.2d 718 (S.D. 1983)). "The fundamental test is whether the plea of guilty was an intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." *Id.* (citation and internal quotations omitted). The fact that Hofer ingested medication around the time of the plea does not "render him per se incompetent to enter a plea of guilty." *Bolger*, 332 N.W.2d at 721 (citing *Branstuder v. State*, 609 S.W.2d 460 (Mo.Ct. App.1980)).

[¶ 27.] At the habeas hearing Hofer offered only his testimony and that of his wife to support his claim that the medications affected his ability to assist in his defense and to enter a knowing, intelligent, and voluntary plea. This was combated by the testimony of trial counsel who stated he did not observe Hofer under the influence of anything or that Hofer behaved irrational in any way.

[¶ 28.] Hofer offered no expert testimony that his plea was not knowing, intelligent, or voluntary. Interestingly, he had been exam-

ined by Dr. Bean, a psychiatrist, prior to entering his plea to determine if he was competent to stand trial and to assist in his defense. Dr. Bean knew Hofer was taking Darvocet and Valium, but stated that he was still competent and able to assist in his defense. The habeas court appropriately relied upon this evidence in holding that Hofer had failed to show his plea was unconstitutional.

[¶ 29.] Hofer was fully advised of his constitutional rights at the time of his plea. He was also informed of the maximum sentence he faced, despite the fact that he expected a lesser sentence. "Surprise or disappointment at the severity of a sentence does not alone constitute grounds for the withdrawal of a guilty plea after sentencing." *Lohnes*, 344 N.W.2d at 688 (citations omitted).

[¶ 30.] Under the totality of the circumstances, it appears Hofer's plea was knowing, voluntary, and intelligent. There simply was no evidence to hold otherwise, other than the subjective statements of Hofer and his wife that he was "slow," "passive," and "dull acting."

[¶ 31.] We affirm the habeas court on all issues.

[¶ 32.] SABERS, AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.

---

2. It is interesting to note that Hofer has not always maintained that his trial counsel's, Light's, performance was deficient. Dr. Bean, a psychiatrist, had performed a psychiatric evaluation of Hofer in preparation for trial, and at that time, Hofer "indicated that he had a good relationship with his attorney, Mr. Light, that he is aware of some of the legal activities that Mr. Light was initiating in his behalf and that he was in concert with those activities."