2002 SD 48

**Eric J. COON, Petitioner and Appellant,**

**v.**

**Douglas WEBER, Warden, South Dakota State Penitentiary, Respondent and Appellee.**

**Robert D. Poppen, Petitioner and Appellant,**

**v.**

**Douglas Weber, Warden, South Dakota State Penitentiary, Respondent and Appellee.**

Nos. 22060, 22061.

Supreme Court of South Dakota.

Considered on Briefs March 25, 2002.

Decided May 1, 2002.

Michael B. Thompson, Sioux Falls, South Dakota, Attorney for petitioners and appellees Coon and Poppen.

Mark Barnett, Attorney General, Frank Geaghan, Sherri Sundem Wald, Assistant Attorneys General, Pierre, South Dakota, Attorneys for respondent and appellee.

PER CURIAM.

[¶ 1.] Eric J. Coon and Robert D. Poppen filed separate appeals from a joined habeas corpus action. Each is serving a life sentence in the state penitentiary for his involvement in the murder of Mary K. Ross. Because their appeals are nearly identical and involve the same legal issue, they are combined here.[1] We affirm.

1. Both petitioners were represented in the habeas court and on appeal by the same attor-

## FACTS AND PROCEDURE

[¶ 2.] Ross was murdered in her Sioux Falls apartment around 4:00 a.m. on July 9, 1995 by Coon and co-defendant, Poppen. Coon and Poppen were hired by Michael Smith and Robert Power to kill Ross, a friend of Power's wife. Power believed Ross was interfering with his marriage and was upset that Ross had smoked marijuana in front of his child. Coon and Poppen were provided with Power's automobile, money to purchase supplies to commit the crime,[2] and a map of Ross' apartment and parking area and a key to her apartment.

[¶ 3.] Coon and Poppen found Ross sleeping in her bedroom and delivered a total of 16 stab and sharp force wounds to her head and upper body. The crime scene was particularly gruesome because Ross had managed, during the attack, to escape to the kitchen and attempt telephone contact with a 911 operator. Coon and Poppen, whose knives broke with the force of their stabbings, rifled through kitchen drawers for knives to complete their mission. They left Ross on her living room couch, with her throat cut, believing she was dead.

[¶ 4.] Coon and Poppen were to receive $10,000 each for killing Ross. They believed their acts would make people fear them and provide a boost to their egos. Poppen claimed that for he and Coon, it was all about "power and money." In the end, they received no more than the $50

given them to purchase the knives and gloves, though they were convinced Power would pay them as he "seemed like a nice enough person" when they contracted with him to kill Ross.

[¶ 5.] Investigators arrived at the crime scene almost within the hour of the murder and quickly put together a list of suspects from information gleaned from Ross' address book and informants. On August 1, 1995, police detectives began to gather those suspects for interrogation. As authorities located these individuals, they began to appear at the police station around the same time although it had not been the intent of law enforcement to have them all present at the same time. They were placed in various interview rooms, some equipped with taping equipment and some not. Detectives moved between the rooms as information unfolded about the events surrounding this crime. That day, after waiving their Miranda rights, both Coon and Poppen separately confessed to her murder. That same evening, co-defendant Smith admitted that Power had hired Coon and Poppen to murder Ross.

[¶ 6.] Although their attorneys filed motions to suppress their confessions, Poppen pled guilty on December 15, 1995, and Coon pled guilty on December 18.[3] Each was sentenced to life in prison. By pleading guilty, conspiracy to commit murder charges were dropped and they avoided the death penalty, an option open to the

---

ney. As noted, the habeas actions were joined for hearing and adjudication. Their attorney filed nearly identical appellate briefs, incorporating by reference into one reply brief the rebuttal argument from the other.

2. The record indicates they went to a Hy–Vee grocery store and purchased two knives, two pairs of gloves, cigarettes, soda, and a frying pan to give to Poppen's girlfriend as, Poppen reasoned, "it would look kind of fishy if we just went in and bought knives and gloves."

3. Power and another co-defendant, Walter Craft, also pled guilty to charges involving Ross' murder on December 18, 1995. Only Smith elected to proceed to trial. His judgments of conviction for accessory to murder and conspiracy to commit murder were affirmed on appeal. *State v. Smith*, 1998 SD 6, 573 N.W.2d 515.

State's Attorney. Poppen was also able to have a Part II habitual offender information dropped.

[¶ 7.] Both filed pro se habeas corpus actions that were later amended by court-appointed counsel. Both claimed the same issue and requested joinder of their actions before the habeas court. They were denied relief by the habeas court, were granted certificates of probable cause and appealed to this Court. Both identify the same issue on appeal.

## ISSUE

[¶ 8.] **Whether ineffective assistance of counsel rendered Coon's and Poppen's guilty pleas involuntary.**

## STANDARD OF REVIEW

[¶ 9.] The scope of review is limited in this collateral attack on the final judgment. *Hofer v. Class*, 1998 SD 58, ¶ 6, 578 N.W.2d 583, 585. Habeas can only be used to review whether the trial court had personal and subject matter jurisdiction, whether the sentence was illegal, and whether the defendant was deprived of basic constitutional rights. *Id.*

[¶ 10.] A claim of ineffective assistance of counsel presents a mixed question of law and fact. Factual findings are reviewed under the clearly erroneous standard. "In the absence of a clearly erroneous determination, we defer to the habeas court's findings of fact regarding what counsel did or did not do, but we may substitute our own judgment 'as to whether defense counsel's actions or inaction[s] constituted ineffective assistance of counsel.'" *Id.* at ¶ 7, 578 N.W.2d at 585 (quoting *Lien v. Class*, 1998 SD 7, ¶ 12, 574 N.W.2d 601, 607; *Lykken v. Class*, 1997 SD 29, ¶ 6, 561 N.W.2d 302, 304–05).

## ANALYSIS AND DECISION

[¶ 11.] Coon and Poppen shoulder a heavy burden of proof in their ineffective assistance of counsel claims. They must prove "(1) that counsel's representation fell below an objective standard of reasonableness, and (2) that such deficiency prejudiced the defendant." *Rhines v. Weber*, 2000 SD 19, ¶ 13, 608 N.W.2d 303, 307; *Siers v. Class*, 1998 SD 77, ¶ 12, 581 N.W.2d 491, 495; *Sprik v. Class*, 1997 SD 134, ¶ 22, 572 N.W.2d 824, 829; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–93. Attorneys are presumed to be competent unless otherwise shown and the reasonableness of counsel's performance is evaluated from counsel's perspective at the time in light of all of the circumstances. *Davi v. Class*, 2000 SD 30, ¶ 17, 609 N.W.2d 107, 112.

[¶ 12.] In examining the first prong of an ineffective assistance claim under *Strickland*, we have held:

When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Lien,* 1998 SD 7 at ¶ 14, 574 N.W.2d at 607 (citations omitted). However, where there is no trial, as is the case here, the burden on the defendants to show ineffective assistance of counsel is increased. They must show not just deficient performance, but gross error by counsel in recommending that they plead guilty. *Hofer,* 1998 SD 58 at ¶ 11, 578 N.W.2d at 586 (quoting *Williams v. State,* 349 N.W.2d 58, 62 (S.D. 1984)); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

[¶ 13.] In examining the second prong under *Strickland,* where there is no trial, we have held:

> In many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led *counsel* to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence *likely* would have changed the *outcome* of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

*Lien,* 1998 SD 7 at ¶ 15, 574 N.W.2d at 607–08 (citations omitted)(emphasis in original).

[¶ 14.] Both Coon and Poppen now claim their drug use just prior to their August 1, 1995 confessions at the police station caused their confessions to be involuntary. They claim their motions to suppress their confessions would have been successful, but for their guilty pleas which effectively precluded consideration of these motions. They claim their attorneys were ineffective in allowing them to plead under these circumstances, rather than proceeding to trial, and therefore, their guilty pleas are invalid. Attorneys John Schlimgen and Scott Heidepriem represented Coon; attorneys Steve Binger and Michael Hanson represented Poppen.[4] Both Coon's and Poppen's videotaped interviews with law enforcement on August 1, 1995 were reviewed by Dr. Mathias Stricherz, a psychologist and chemical dependency counselor, in preparation for their habeas hearing.

1. Voluntariness of the confessions

[¶ 15.] The question of voluntariness of a confession is a factual matter for the trial court. *State v. Phipps,* 318 N.W.2d 128, 131 (S.D.1982); *State v. DuBois,* 286 N.W.2d 801 (S.D.1979); *State v. Lyons,* 269 N.W.2d 124 (S.D.1978). "The test for determining voluntariness of incriminating statements or confessions requires the trial court to consider the effect the totality of the circumstances had upon the will of the defendant and whether that will was overborne." *State v. Gesinger,* 1997 SD 6, ¶ 12, 559 N.W.2d 549, 550; *State v. Oltmanns,* 519 N.W.2d 602, 605 (S.D.1994) (citing *State v. Dickey,* 459 N.W.2d 445, 447 (S.D.1990); *State v. Jenner,* 451 N.W.2d 710, 716 (S.D.1990); *State v. Hartley,* 326 N.W.2d 226 (S.D.1982); *Schneckloth v. Bustamonte,* 412 U.S. 218,

---

4. The habeas court made findings of fact that the attorneys who represented Coon and Poppen and who testified at their habeas hearing all had experience representing clients in homicide cases at the time they were appointed in this case.

93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). The factors the trial court must consider in determining whether the defendant's will was overborne include: 1) the defendant's youth; 2) the defendant's lack of education or low intelligence; 3) the absence of any advice to the defendant of his constitutional rights; 4) the length of detention; 5) the repeated and prolonged nature of the questioning; and 6) the use of physical punishment such as the deprivation of food or sleep. *State v. Darby,* 1996 SD 127, ¶ 28, 556 N.W.2d 311, 319 (citing *Dickey,* 459 N.W.2d at 447).[5] "A defendant's prior experience with law enforcement officers and the courts may also be a factor for the court's consideration." *Id.* at ¶ 30, 556 N.W.2d at 320 (citing *State v. Caffrey,* 332 N.W.2d 269, 272 (S.D.1983)).

[¶ 16.] We have previously held that the influence of alcohol is a factor in the totality of circumstances to be reviewed in determining whether a confession is voluntary. *Smith,* 1998 SD 6 at ¶ 12, 573 N.W.2d at 518; *State v. Gregg,* 405 N.W.2d 49, 53 (S.D.1987) (custodial statements made by an intoxicated defendant are not per se involuntary); *State v. Hintz,* 318 N.W.2d 915 (S.D.1982). Today we review a determination of voluntariness upon a totality of circumstances that includes the recent ingestion of illegal drugs. The habeas court found that the confessions of Poppen and Coon were voluntary. We are bound by this finding unless it is clearly erroneous. *State v. DeNoyer,* 541 N.W.2d 725, 731 (S.D.1995) (citing *State v. Tapio,* 459 N.W.2d 406, 411 (S.D.1990)). "In reviewing the trial court's findings, we consider the evidence in the light most favorable to the finding." *Id.*

[¶ 17.] Dr. Stricherz provided his opinion that both defendants were under the influence of drug intoxication and/or withdrawal of methamphetamine and marijuana during the police interrogations. As his report indicates, some of his information was self-reported by the petitioners. Testifying before the habeas court, Dr. Stricherz admitted their behavior during the interviews could also have been the result of their "just be[ing] nervous and scared."[6] Police detective Lt. Folkerts testified at the habeas hearing that both petitioners responded well to questions asked of them and he did not believe them to be unduly affected by drugs or alcohol during the interviews.[7] However, even accepting as true Coon's and Poppen's claims on appeal that they were intoxicated or in withdrawal when they confessed does not determine the question whether by reason of their drug ingestion or other factors, their will was overborne and their statements were not knowing and voluntary. In other words, Coon and Poppen cannot just present expert testimony that they were under the influence and win their appeal.[8]

---

**5.** We have reviewed petitioners' claims regarding these factors and find them to be without merit.

**6.** Support for this opinion by Dr. Stricherz comes from Coon himself. During his second interview with police, Coon told the detective, "I knew you could tell there was something I knew because I was sitting here fidgeting."

**7.** Lt. Folkerts interviewed both petitioners. His testimony at the habeas hearing negates their claim on appeal that the State presented no evidence to dispute Dr. Stricherz' opinion.

**8.** Notwithstanding the additional question of the effect any intoxication had on their ability to make a voluntary statement, petitioners seem convinced that an opinion by an expert witness settles the issue and that the habeas court erred in not rendering its opinion along those same lines. This Court has often stated, however, that " '[t]he trier of fact is free to accept all of, part of, or none of, an expert's opinion.' " *Belhassen v. John Morrell & Co.,* 2000 SD 82, ¶ 17, 613 N.W.2d 531, 536 (quoting *Kester v. Colonial Manor of Custer,* 1997 SD 127, ¶ 24, 571 N.W.2d 376, 380; *Hanson*

[¶ 18.] According to most courts having recently addressed this question involving the use of drugs prior to rendering a confession, the test for undue influence is whether the defendant can still relate the events of the time in question and his role in them. *State v. Troglin,* 2002 WL 385800, *14 (Tenn.Crim.App. 2002); *State v. Spyke,* 68 Conn.App. 97, 792 A.2d 93, 101 (2002); *State v. Cribbs,* 34 P.3d 76, 82 (Kan.Ct.App.2001); *State v. Craft,* 796 So.2d 907, 912 (La.Ct.App.2001); *Bey v. State,* 140 Md.App. 607, 781 A.2d 952, 958 (2001); *Card v. United States,* 776 A.2d 581, 603 (D.C.Ct.App.2001); *Davila v. State,* 2001 WL 580340, *1 (TexCtApp 2001); *Jones v. State,* 344 Ark. 682, 42 S.W.3d 536, 541 (2001).

> When an appellant claims that his confession was rendered involuntary because of his drug or alcohol consumption, the level of his comprehension is a factual matter to be resolved by the trial court. While this court will make a closer examination of the appellant's mental state, we still leave the factual question to the trial court on whether the accused had sufficient capacity to waive his rights. The test of voluntariness of one who claims intoxication at the time of waiving his rights and making a statement, is whether the individual was of sufficient mental capacity to know what he was saying—capable of realizing the meaning of his statement— and that he was not suffering from any hallucinations or delusions. We have also stated that it is significant in making a finding of voluntariness that the accused answered questions without indications of physical or mental disabilities, that the accused remembered a number of other details about the interrogation even though he could not remember waiving his rights, and that a

statement was given in a short period of time after his rights had been read to him.

*Id.* (internal citations omitted).

[¶ 19.] In the present case, the habeas court reviewed the videotaped interviews and found Coon "to provide detailed answers to questions, to be aware of the situation as a suspect in a murder investigation, and to deny his involvement in that murder during the first portion of his interview with police." The court declared it was "clear that Petitioner was coherent and able to respond to the questions put to him." Regarding Poppen, the habeas court likewise found that during the interview, he was coherent, able to respond to questions, and was not intimidated by police questioning. Our review of these interviews confirms the habeas court's findings; both petitioners provided very detailed descriptions of the events surrounding the crime and described his own role in these events. Reviewing the same evidence that was before the habeas court, and considering it in the light most favorable to that court's findings, we hold that the findings are not clearly erroneous. *See State v. West,* 344 N.W.2d 502, 505 (S.D.1984) (trial court was not clearly erroneous in finding that defendant, who claimed to have consumed alcohol and drugs prior to his confession, voluntarily waived his rights where defendant appeared coherent and did not slur his speech).

### 2. Ineffective Assistance

[¶ 20.] The record reflects that counsel considered the merits of the voluntariness claims that petitioners now raise. They testified at the habeas hearing that they reviewed the videotaped interviews prior to making the tactical decision to

*v. Penrod Constr. Co.,* 425 N.W.2d 396, 398 (S.D.1988)).

advise their clients to plead guilty. They testified that they concluded the confessions were voluntary, that law enforcement had not appeared to violate any of the petitioners' rights in taking these statements, and that they did not believe them to be under the influence to the point of having their free will overborne. The habeas court arrived at this same conclusion. It is noteworthy that although Coon and Poppen now freely admit to their ingestion of drugs prior to confessing their crimes, neither petitioner provided this information to their attorneys before entering guilty pleas, though they did inform their attorneys they used drugs on a regular basis. An ineffective assistance claim is always viewed given the facts known at the time ineffectiveness is alleged, not with the 20–20 vision provided by hindsight. *Rhines*, 2000 SD 19 at ¶ 21, 608 N.W.2d at 309 ("The test for ineffective assistance is not whether counsel could dream up new trial strategies with the benefit of hindsight. It is whether counsel pursued a sound strategy at the time of the alleged error." citing *Sprik*, 1997 SD 134 at ¶ 23, 572 N.W.2d at 829); *Aliberti v. Solem*, 428 N.W.2d 638, 641 (S.D.1988) ("When reviewing counsel's performance, this Court will not make a competency determination on the basis of hindsight."). Petitioners must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Weddell v. Weber*, 2000 SD 3, ¶ 32, 604 N.W.2d 274, 283 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694). Both Coon and Poppen expressed satisfaction with their attorneys' representation to the trial court at their plea hearings.

 [¶ 21.] As previously stated, the trial court did not rule on the motions to suppress due to the defendants entering guilty pleas.[9] Assuming, however, for the sake of argument, that their confessions would have been suppressed, what other evidence did the State have to present at trial to prove their guilt beyond a reasonable doubt? What were their chances for acquittal? And, if a guilty verdict was inevitable under the evidence, what would they gain by their attorneys advising them to plead guilty? These questions directly impact on the petitioners' claims of ineffective assistance of counsel for these are the questions considered by attorneys when advising clients whether to accept a plea bargain.[10]

**9.** Challenging the denial of a motion to suppress evidence is generally an issue for direct appeal. However, because Coon and Poppen pled guilty, this issue would not have been available to them on appeal. *State v. Cobb*, 479 N.W.2d 879, 881 n.1 (SD 1992) ("When a defendant pleads guilty or nolo contendere the defendant also waives the right to appeal any pretrial rulings."). Neither defendant here appealed his judgment of conviction.

**10.** As the State notes in its brief: "Whether this Court might subsequently find that Petitioner's confession was inadmissible in evidence does not justify a conclusion that defense counsel were incompetent or ineffective in believing the admissibility of the confession sufficiently probable to advise a plea. *McMann*, 397 U.S. at 770, 90 S.Ct. at 1448,

25 L.Ed.2d 763 (1970)." The United States Supreme Court observed in *McMann:*

> In our view a defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession. Whether a plea of guilty is unintelligent and therefore vulnerable when motivated by a confession erroneously thought admissible in evidence depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases.

*Id.*, 397 U.S. at 770–71, 90 S.Ct. at 1448–49, 25 L.Ed.2d 763.

[¶ 22.] Although Coon and Poppen claim their statements were the only evidence against them, the record does not support this claim. They were two of five co-defendants in this case and were implicated in the murder scheme by the other three and others who were more peripherally involved. *See Smith,* 1998 SD 6 at ¶ 3, 573 N.W.2d at 516 ("On August 1, 1995, Smith provided two videotaped interviews to police which corroborated the version of the murder and the planning leading up to it given by his co-defendants and three other State witnesses."). A letter between Coon's co-counsel indicates his attorneys' consideration of their client's chances for acquittal:

> I have only reviewed the reports themselves, and did those rather hurriedly. From the basis of those reports, from talking to the other attorneys, and from talking to our client, a major miracle would be necessary to get an acquittal. There are a couple areas of law that I need to research, but I think I know the answer already. The area that we hopefully will get our best results are in the death penalty area. That will also be a struggle.

This letter was an exhibit at the habeas hearing. As is indicated in this letter, the death penalty was a very real punishment facing Coon and Poppen. Poppen's attorney testified at the habeas hearing that "this was a case in my mind that had the death penalty written all over it." The record reveals that counsel tried to arrange a plea bargain with the State's Attorney that would allow for a term of years. The State's Attorney showed no interest and counsel was informed this was going to be a case for life or the death penalty and that would be the State's of-

fer. Poppen's attorneys testified at the habeas that, with so many co-defendants confessing to their part in the murder, they believed that whoever made a deal with the State's Attorney first would get the benefit that late-comers might not as co-defendants agreed to testify against the others.[11] Under these facts, looking at the totality of the circumstances, it was entirely reasonable for defense counsel to advise their clients to plead guilty.

[¶ 23.] In another case involving ineffective assistance of counsel claims regarding a guilty plea, we stated:

> In numerous meetings with appellant, defense counsel advised him to accept the plea bargain offer. They noted that if both rape charges went to trial he would expose himself to consecutive maximum sentences of fifty years. If he pleaded guilty to one charge, the maximum penalty could not exceed twenty-five years. Defense counsel maintained that appellant would likely receive less than the maximum sentence and possibly probation because of his clean record.

> We cannot conclude this advice was against appellant's best interest. Our usual test of competency is whether defense counsel exercised the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances. Where a matter does not go to trial there is an increased burden to show ineffective assistance of counsel. In order to invalidate a guilty plea, appellant must show gross error on the part of counsel in recommending that he plead guilty.

> This standard is consonant with our law regarding withdrawal of guilty pleas. When a defendant moves to withdraw

---

11. The record shows that as an express condition in their plea agreements, both Coon and Poppen agreed to assist law enforcement in their continuing investigation and testify in the prosecution of all co-defendants involved in the murder of Ross.

his guilty plea after sentence has been imposed, the trial judge will set aside the judgment of conviction and permit defendant to withdraw his plea only to correct manifest injustice. SDCL 23A–27–11. The purpose of this stringent standard is 'to prevent a defendant from testing the weight of potential punishment, and then withdrawing the plea if he finds the sentence unexpectedly severe.'

*Williams*, 349 N.W.2d at 61–62 (internal citations omitted). That same year, we handed down our decision in *Stacey v. State*, 349 N.W.2d 439 (S.D.1984), also addressing an ineffective assistance of counsel claim involving advice to plead guilty. We held that such advice, which allowed the petitioner to avoid maximum punishment, in a case where it was likely the petitioner would be found guilty at trial, was in the petitioner's best interests and did not constitute ineffective assistance. *Id.* at 444.

[¶ 24.] The record shows that both Coon and Poppen were not only advised by their attorneys regarding their plea, but also had several days to reflect on this advice and sought counsel of family and friends, including fellow jail inmates. The habeas court found, and the record supports these findings, that the petitioners themselves ultimately made the decision to plead guilty. On review of the totality of the circumstances, pleading guilty was in their best interests as it allowed them to

avoid the death penalty.[12] With three co-defendants' statements and other State's witnesses, there was substantial evidence to convict Coon and Poppen had they proceeded to trial.[13] Even without their confessions, acquittal was highly unlikely. Had they not been so advised by their attorneys, we may well be reviewing a claim of ineffective assistance of counsel for failure to strongly urge a plea bargain and thereby avoid the death penalty. *See Williams*, 349 N.W.2d at 62.

[¶ 25.] Neither Coon nor Poppen has established his confession was involuntarily made, nor has he shown gross error on the part of counsel in recommending that he plead guilty, nor has he shown prejudice under *Strickland*. The orders denying habeas relief as to both petitioners are affirmed.

[¶ 26.] GILBERTSON, Chief Justice, and SABERS, AMUNDSON, and KONENKAMP, Justices, and GORS, Acting Justice, participating.

[¶ 27.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court did not participate.

---

**12.** At his plea hearing, Poppen informed the trial court that one of the reasons he was pleading guilty was because he was afraid of the death penalty.

**13.** Besides this testimony, there was clothing recovered and evidence of the purchase of the knives and gloves at Hy–Vee by Coon and Poppen.