#23985-rev-WILBUR, Circuit Judge
**2007 SD 81**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

FARRELL DILLON,                           Petitioner and Appellant,

   v.

DOUG WEBER, Warden of the South
Dakota State Penitentiary,                Respondent and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE MERTON B. TICE, Jr.
Judge

\* \* \* \*

STEPHANIE E. POCHOP of
Johnson Eklund Law Offices          Attorneys for petitioner
Gregory, South Dakota               and appellant.

LAWRENCE E. LONG
Attorney General

SHERRI SUNDEM WALD and
MEGHAN N. DILGES
Assistant Attorneys General         Attorneys for respondent
Pierre, South Dakota                and appellee.

\* \* \* \*

ARGUED
MARCH 19, 2007

OPINION FILED 8/1/07

#23985

WILBUR, Circuit Judge

[¶1.] Habeas corpus petitioner seeks relief based on ineffective assistance of trial counsel. The habeas court found no ineffective assistance. We reverse.

BACKGROUND

[¶2.] An overview of the factual and procedural history of this case is set forth in State v. Dillon, 2001 SD 97, 632 NW2d 37. Only the facts pertinent to the present habeas corpus action will be discussed here. In 1998 Farrell Dillon (Dillon) was charged with seven counts of first degree rape, two counts of third degree rape, and five counts of criminal pedophilia.[1] It was alleged that Dillon performed these acts, on two separate occasions, upon his eight-year-old daughter K.D. and four of her friends: seven-year-old L.R., nine-year-old N.R., eight-year-old S.R.B., and eight-year-old T.T. Dillon pled not guilty to all charges and has at all times maintained his innocence.

[¶3.] Dillon hired Attorney Richard Bode (Bode) to represent him. A jury trial was held on August 17-20, 1999. Dillon was convicted of five counts of first degree rape and three counts of criminal pedophilia. The jury found Dillon not guilty of two counts of first degree rape and two counts of criminal pedophilia. Dillon received a 175-year sentence.

[¶4.] After obtaining new counsel, Dillon appealed, arguing that convictions for both first degree rape and criminal pedophilia arising from the same act of sexual penetration violated the double jeopardy provisions of both the United States and South Dakota Constitutions. Despite the fact that Dillon failed to raise the

---

1. The two counts of third degree rape were dismissed prior to trial.

-1-

double jeopardy issue at trial, this Court, applying "the plain error rule and the doctrine allowing courts to rectify constitutional error," vacated three of the first degree rape convictions and the case was remanded for resentencing. *Dillon,* 2001 SD 97, ¶12, 632 NW2d at 43. Dillon was re-sentenced to a term of 115 years.

[¶5.] Dillon subsequently filed the current habeas action based on ineffective assistance of his trial counsel, Bode.[2] A hearing was held before the Honorable Merton Tice on April 18-19, 2005. Dillon testified at the hearing, as did Bode and two expert witnesses that Bode had hired to testify on Dillon's behalf at trial. Two expert criminal defense attorneys, Stanley Whiting and Randy Connelly, hired respectively by Dillon and the State, also testified as to the effectiveness of Bode's representation as trial counsel. After the hearing, Judge Tice denied Dillon's request for habeas relief, concluding that Dillon failed to meet his burden of proving that he received an unfair trial. Findings of fact, conclusions of law, and an order denying Dillon's writ were issued on December 22, 2005. Dillon filed a motion for a certificate of probable cause, which the habeas court granted in an order dated January 11, 2006. Dillon filed the present appeal on February 2, 2006.

## STANDARD OF REVIEW

[¶6.] In a habeas case based on ineffective assistance of counsel, the defendant bears the burden of proving by a preponderance of the evidence that he is entitled to relief. Owens v. Russell, 2007 SD 3, ¶6, 726 NW2d 610, 614 (citations

---

2. Dillon raised the ineffective assistance of counsel argument in his original appeal, but this Court declined to hear the issue on the basis that "[t]he preferred arena for an ineffective assistance claim is a habeas corpus proceeding." *Dillon,* 2001 SD 97, ¶28, 632 NW2d at 48.

omitted). The habeas court's findings of fact regarding counsel's performance are reviewed for clear error, and its conclusions of law are reviewed de novo. *Id.* This Court may substitute its own judgment "'as to whether defense counsel's actions or inactions constituted ineffective assistance of counsel.'" *Id.* (quoting Nikolaev v. Weber, 2005 SD 100, ¶8, 705 NW2d 72, 75).

[¶7.] A claim of ineffective assistance of counsel presents a mixed question of law and fact and must be reviewed under the two-prong test announced in Strickland v. Washington, 466 US 668, 104 SCt 2052, 80 LEd2d 674 (1984). "Under the first prong, the petitioner must show trial counsel's errors were so serious that he was not functioning as counsel guaranteed by the Constitution." Denoyer v. Weber, 2005 SD 43, ¶19, 694 NW2d 848, 855 (citations omitted). This requires the petitioner to demonstrate that counsel's representation failed to satisfy an objective standard of reasonableness. *Owens*, 2007 SD 3, ¶8, 726 NW2d at 615 (citing Hofer v. Class, 1998 SD 58, ¶10, 578 NW2d 583, 585). "'Judicial scrutiny of counsel's performance must be highly deferential.'" *Id.* The petitioner must overcome "'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]'" *Id.*

[¶8.] The second prong in the *Strickland* analysis "requires a showing of serious prejudice such that the errors deprived the defendant of a fair trial, a trial whose result is reliable." *Denoyer*, 2005 SD 43, ¶19, 694 NW2d at 855. Prejudice exists only when "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Owens*, 2007 SD 3, ¶9, 726 NW2d at 615 (quoting *Strickland*, 466 US at 694, 104

#23985

SCt at 2068). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id*.

ANALYSIS

ISSUE ONE

[¶9.] **Was Bode functioning as counsel guaranteed by the Sixth Amendment to the Constitution?**

[¶10.] The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The purpose of this constitutional guarantee is to assure "that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." *Strickland*, 466 US at 692, 104 SCt at 2067. A lawyer does not satisfy this constitutional mandate if his representation falls below an objective standard of reasonableness. *Owens*, 2007 SD 3, ¶8, 726 NW2d at 615 (citations omitted). In making this determination, we have said:

> While this Court will not compare counsel's performance to that of some idealized "super-lawyer" and will respect the integrity of counsel's decision in choosing a particular strategy, these considerations must be balanced with the need to insure that counsel's performance was within the realm of competence required of members of the profession.

Sprik v. Class, 1997 SD 134, ¶24, 572 NW2d 824, 829 (quoting Roden v. Solem, 431 NW2d 665, 667 n1 (SD 1988)).

[¶11.] Claims of ineffective assistance of counsel must be evaluated in light of the totality of the circumstances. Iron Shell v. Leapley, 503 NW2d 868, 872 (SD 1993) ("In determining whether counsel was ineffective, we must consider the totality of the evidence before the judge or jury."); Aliberti v. Solem, 428 NW2d 638,

-4-

641 (SD 1988) ("The ultimate test of whether trial counsel was ineffective is whether under the entire record and totality of the circumstances, counsel's performance was within the range of normal competency."). *See also* Lawrence v. Lockhart, 767 F2d 449, 450 (8thCir 1985) (indicating that, to prove ineffective assistance of counsel, a petitioner must prove "that his attorney's actions were unreasonable when viewed in the totality of the circumstances"). The record in this case is replete with examples of deficient performance on the part of Dillon's counsel Bode, during both the pretrial and trial stages of the proceeding. When viewed in the totality of the circumstances, it is clear that Dillon's representation was below the level of competency required by members of the legal profession.

### A. *Pretrial errors*

[¶12.] Bode's failure to raise the double jeopardy defense at Dillon's trial was evidence of his ineffectiveness. This Court rectified the mistake on appeal, but that concerned only Dillon's sentence, not the findings of guilt or innocence on each of the underlying charges. Had Bode identified the double jeopardy issue, it would have resulted in three fewer charges being brought against Dillon, and three fewer charges read to the jury at the start of the trial. The number of charges brought against a defendant could have a prejudicial effect. This Court has found ineffective assistance when a lawyer, among other failings, "made no attempt to limit the number of charges brought against [the defendant]." New v. Weber, 1999 SD 125, ¶12, 600 NW2d 568, 574 (citing Wayrynen v. Class, 1998 SD 111, 586 NW2d 499).

[¶13.] Another example of ineffectiveness was Bode's failure to investigate a prior allegation of sexual abuse by two of the victims in the case, N.R. and L.R. In

1994, N.R., L.R., and their mother accused a man other than Dillon of sexual assault. The State declined to prosecute the alleged perpetrator. Prior to the trial court's hearing on whether this previous allegation would be admissible at Dillon's trial, Bode failed to contact the alleged perpetrator and did not explore the basis for the State's refusal to prosecute. The trial court ruled that Dillon could not use the prior abuse allegations at trial. This Court has found ineffective assistance "when counsel failed to inquire of known witnesses[.]" *Id.* ¶13 (citing Sund v. Weber, 1998 SD 123, 588 NW2d 223). *See also* Chambers v. Armontrout, 907 F2d 825, 829-31 (8thCir 1990) (holding that the failure to investigate constitutes ineffective assistance of counsel).

[¶14.]      Bode's failure to prepare his expert witnesses was further evidence of his ineffectiveness. Both expert witnesses, Dick Leir, a clinical social worker, and Dr. Dewey Ertz, a psychologist, testified at the habeas hearing that Bode had failed to properly prepare them for the trial. Notably, there was no physical evidence of sexual assault in this case, and the entire case turned on the credibility of the victims. Expert testimony was critical to Dillon's defense. Thus, Bode's failure to properly prepare Dillon's two expert witnesses was an error.

[¶15.]      Another serious error was Bode's failure to provide the trial court with an offer of proof concerning his expert witness testimony. At a pretrial hearing on August 4, 1999, the trial court specifically requested from Bode "a more specified offer of proof about what type of testimony you intend to elicit [from your expert witnesses]." Bode sought to introduce evidence about the interview techniques employed on the victims in the case, but the trial court was not satisfied with the

foundation laid by Bode for such testimony. Still, the trial court gave Bode another chance, and even seemed to guide him along, stating:

> The Court will allow generalized compression on interview techniques if you lay the right foundation. For example, you asked questions like this: Can children's involvement with each other affect each other? Can an interviewer produce false memories of children? Did you find inconsistencies from your examination of the statements? Et cetera. These are all proper lines of inquiry providing you can lay the specific factual foundation. . . . [A]nd that's why the Court is requesting from you a more specified offer of proof on how you intend to approach the interview topic.

[¶16.]    Bode provided no subsequent offer of proof on this topic. Instead, on the third day of trial, he attempted to introduce expert testimony on another topic, one which the trial court had already ruled inadmissible during a pretrial hearing. The trial court rebuked Bode:

> It's untimely, Mr. Bode. We're in the third day of trial. The Court has given you an opportunity and I believe an opportunity to present your expert testimony to make an offer of testimonial. I believe the Court gave you a continuance to present that. And then the Court gave you a further opportunity to present it in writing, even after the hearing which you were to have your experts there and to testify. You have presented this same theory of a defense through the proffer with your other experts. The Court's rejected it. It's still denied.

From his failure to prepare his expert witnesses, to his failure to follow through with the trial court's generous leniency concerning offers of proof, Bode committed serious errors in his handling of the expert witnesses and their testimony in this case.

### B.  Trial errors

[¶17.]    Dillon alleges that Bode erred in a number of ways throughout the course of the trial.  First, Dillon asserts that Bode failed to properly prepare Dillon and his grandmother for their trial testimony.  Second, Dillon cites Bode's phone call to Dillon's mother at 6:30 a.m. on the last day of trial asking her to round up witnesses to testify.  Third, Dillon points out that Bode repeatedly failed to object to hearsay testimony from the State's witnesses.  Fourth, Dillon argues that Bode failed to impeach L.R. and N.R.'s mother's testimony that her children were healthy and normal prior to Dillon's alleged sexual assault.  In fact, L.R. and N.R.'s medical records, obtained by Bode before trial, revealed an extensive history that included more than 50 emergency room visits.  Bode made no effort to use these medical records for impeachment purposes.  All of these examples demonstrate the ineffectiveness of Dillon's counsel.

[¶18.]    Possibly the most disturbing trial error concerned Bode's cross examination of victim N.R., which consisted, in part, of the following disjointed series of questions:

> Q. [Bode] Was there a time when all four of you were on the bed?
>
> A. [N.R.] Yes.
>
> Q.  Do you know how many times you've gone over this interview?
>
> A.  No.
>
> Q.  Has it been a lot?
>
> A.  Yes.

Q. Did he have his glasses on or off?

A. Off.

Q. Did [K.D.] cry when he was doing this?

A. No.

Q. Did you cry?

A. No.

THE COURT: Do you have another question, counsel?

The trial court explained its interruption outside of the presence of the jury:

> For the record, as regards to the cross examination that just occurred of N.R. Now, Mr. Bode, during the cross examination which took about twenty-five minutes, there were often delays lasting forty seconds up to a minute, which there was complete silence in the courtroom, which would cause any child or adult a great deal of discomfort. I'm going to direct in your cross examination of the remaining child victims that you have a list of questions that you ask them and that you do not have delays of that length. … I'm going to simply direct that you have a list of questions and that you ask them without that type of forty seconds to a minute delay of complete silence.

The fact that Bode was taking up to a minute between questions is unsettling.

There is no reasonable explanation for this type of uncomfortable delay during the

cross examination of one of the victims in the case.[3] Notably, Dillon was convicted

of all charges relating to this child.

---

3. Two years after Dillon's trial, Bode was diagnosed with bi-polar or manic-depressive disorder. He required several months of in-patient treatment to deal with his mental illness, and at the time of the habeas hearing he was continuing to participate in out-patient therapy.

The Court notes that bi-polar disorder is not a sudden onset condition. Instead, it develops over time. The lower court itself elicited this testimony from Ertz during the habeas hearing. Thus, while this Court cannot be

[¶19.]     Another trial error alleged by Dillon concerned Bode's cross examination of victim S.R.B.  On direct examination, S.R.B. indicated by gesture to the genital area of a diagram of a male body that Dillon had touched her with his penis.  However, S.R.B. verbally denied that level of penetration:

Q. [State's Attorney] What did he touch you with?

A. [S.R.B.] His hands.

Q. Did he touch you with anything else?

A. No.

Bode followed up with the following cross examination of S.R.B.:

Q. [Bode] Did Farrell Dillon's thing go inside you?

A. [S.R.B.] Yes.

Q. Did it hurt?

A. Yes it did.

* * *

Q. Did all three of you get touched by Farrell?

A. Yes.

---

certain that Bode was suffering from bi-polar disorder at the time of Dillon's trial, there is reason to be concerned.

Our finding of ineffective assistance in this case is founded solely on the deficiency of Bode's pretrial and trial performance and not on speculation about his mental health.  Clearly, however, a lawyer suffering from a debilitating mental illness does not provide the type of "assistance" envisioned by the Sixth Amendment.  To be effective, a lawyer's performance must be "'within the realm of competence required of members of the profession.'"  *Sprik*, 1997 SD 134, ¶24, 572 NW2d at 829 (quoting *Roden*, 431 NW2d at 667 n1).  Here, we cannot even be certain that Bode was competent in a general sense, let alone competent to provide legal representation in a serious criminal matter.

Q. Do you remember who got touched first?

A. I did.

Q. Do you remember who got touched second?

A. [K.D.].

Q. And then it was [T.T.]?

A. Yes.

Based on this cross examination, it is difficult to determine who Bode was representing in this case. Notably, Dillon was convicted of all charges relating to S.R.B.

[¶20.] Another serious error occurred during Bode's cross examination of Deb Horan, one of the state's witnesses in the case. The trial court had entered an order in limine preventing Horan from testifying about the credibility and truthfulness of K.D., one of the victims in the case. During cross examination, Bode elicited testimony from Horan vouching for the credibility and truthfulness of K.D. – the exact testimony the order in limine sought to prevent. Thus, Bode violated a pretrial order that expressly favored his own client.

[¶21.] Dillon cites as further evidence of deficient performance Bode's refusal to put into evidence video tapes, audio tapes, and transcripts of interviews of the child witnesses/victims. Bode repeatedly told the jury that he would be offering these exhibits, but in the end refused to do so because, as he testified at the habeas hearing, "I was going to have to prolong the trial and I felt pressured to get this case done as quickly as possible." Why Bode would feel pressured to make trial decisions

based on judicial economy is a mystery, as is his decision to actually give in to this impulse.

[¶22.]     The final trial error alleged by Dillon was Bode's recitation of the wrong burden of proof during his closing argument.  Bode told the jury:

> Do you know when you're accused of this crime, when
> you're accused, the rules are all different in a rape case.
> Because now it's you got a burden to come and disprove it.
> Come on, disprove it.  Disprove it.

The State correctly notes that at another point in the closing argument Bode recited the correct burden or proof.  At the very least, however, Bode was sending mixed and confusing signals to the jury about how they were to weigh the evidence in the case.

## C.  Totality of the circumstances

[¶23.]     When viewed in the totality of the circumstances, the Court concludes Bode's performance as counsel was deficient.  As Dillon's expert witness at the habeas hearing, Stanley Whiting, testified, "the biggest prejudicial thing in the case was the failure to put on a defense:  just didn't do it."  Whiting explained:

> [W]hat I saw was just a total inability to present a
> defense from the very beginning of that trial right up
> through the end when in closing statement comments are
> made that the State was a bunch of fascists. … And
> nothing – nothing was talked about the defense of the
> case.  In fact, he hardly even mentioned the fact that . . .
> his client said he didn't do it.  I mean, it was just a
> terrible defense.  I don't see any other way of reading this
> transcript.  I honest to God don't.

Whiting concluded that "there was not one thing about that whole record that I saw would any way – any way indicate that Farrell Dillon got a fair trial."  Even the State's expert Randy Connelly acknowledged that the record was "fraught with a

number of those inexplicable and . . . misjudging actions" by Bode. Connelly described certain actions of Bode as "bizarre," "illogical," "inappropriate," "misprioritiz[ed]," "over the line," and "unethical." Based on his review of the record, Connelly could conclude only that Dillon had received merely a "minimally fair" trial.

[¶24.] Whether Dillon's trial was even 'minimally fair' is the next question as Dillon's trial counsel was clearly deficient.[4]

## ISSUE TWO

[¶25.] **Was Dillon prejudiced by Bode's deficient representation?**

[¶26.] To satisfy Dillon's burden of proving ineffective assistance of counsel, he must prove not only that his representation was deficient, but also that he suffered prejudice as a result of it. *Denoyer*, 2005 SD 43, ¶19, 694 NW2d at 855. As stated earlier, prejudice exists only when "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Owens*, 2007 SD 3, ¶9, 726 NW2d at 615 (quoting *Strickland,* 466 US at 694, 104 SCt at 2068). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*

[¶27.] Bode's performance as counsel in this case was substandard. Dillon has cited a litany of examples of Bode's deficient performance, any number of which could have influenced the result of his trial. Under these circumstances, we believe that Dillon was obviously prejudiced by Bode's representation. Our confidence in

---

4. The Court notes that, three years after his participation in Dillon's trial, Bode's license to practice law was suspended due to disability. One year later he was disbarred.

the outcome of Dillon's trial is sufficiently undermined to warrant a finding of prejudice. Dillon has sustained his burden of proving that he was prejudiced as a result of Bode's deficient representation.

[¶28.] Interestingly, although the habeas court ultimately did not find that Dillon's trial counsel was ineffective, it did implicitly acknowledge that Bode's performance prejudiced Dillon. The habeas court found that "Bode errored [sic] in a number of ways" but "*most* of those errors have not been shown to have in any significant way affected the outcome of the trial." (emphasis added). We are left to wonder which errors the habeas court found to be prejudicial, but the clear implication is that *some* of Bode's errors *did* affect the outcome of Dillon's trial. This presumes both deficient performance and prejudice, the two elements Dillon must demonstrate to prove ineffective assistance of counsel. The habeas court's findings belie its ultimate conclusion.

## CONCLUSION

[¶29.] To prove ineffective assistance of counsel, a habeas petitioner must satisfy the two pronged test established in *Strickland*, which requires the petitioner to prove both that his counsel's performance was deficient and also that he suffered prejudice as a result. *See Strickland, supra.* The United States Supreme Court has stated that the principles announced in *Strickland* "do not establish mechanical rules." *Strickland*, 466 US at 696, 104 SCt at 2069. The Supreme Court continued:

> Although those principles should guide the process of
> decision, the ultimate focus of inquiry must be on the
> fundamental fairness of the proceeding whose result is
> being challenged. In every case the court should be
> concerned with whether, despite the strong presumption
> of reliability, the result of the particular proceeding is

> unreliable because of a breakdown in the adversarial
> process that our system counts on to produce just results.

*Id.*

[¶30.]    In light of the circumstances of this case, we believe that the fundamental fairness of Dillon's trial was compromised.  Dillon's trial counsel was deficient, which resulted in prejudice to Dillon.  Both prongs of the *Strickland* test are satisfied.  Dillon has sustained his burden of proving ineffective assistance of counsel.

[¶31.]    We reverse the order of the habeas court and remand with instructions to enter a writ directing the state to retry Dillon within a reasonable time or discharge him.

[¶32.]    GILBERTSON, Chief Justice, and SABERS, ZINTER and MEIERHENRY, Justices, concur.

[¶33.]    WILBUR, Circuit Judge, for KONENKAMP, Justice, disqualified.